UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE –NASHVILLE DIVISION

STEPHEN HOLLON,

    Plaintiff,

v.                                         Case No.

INDUSTRIAL PAINTING LTD., INC.
d/b/a IPL INDUSTRIAL SERVICES,

    Defendant.

## COMPLAINT

**NOW COMES the Plaintiff STEPHEN HOLLON,** by and through his attorneys, The Spence Law Firm, PLLC (by Robert L. J. Spence, Jr., Esq., and Chandra S. Madison, Esq. - pending Pro Hac Vice Admissions) and The Law Firm of GARY, WILLIAMS, PARENTI & WATSON, P.L.L.C. (by Lorenzo Williams, Esq.- pending Pro Hac Vice Admission) and for his Complaint against Defendant INDUSTRIAL PAINTING LTD., INC. d/b/a IPL INDUSTRIAL SERVICES states as follows:

### I.    JURISDICTIONAL ALLEGATIONS

1.    Plaintiff STEPHEN HOLLON is, a Caucasian male citizen of the United States, residing in Camden, Benton County, Tennessee.

2.    Defendant Industrial Painting Limited, Inc. is a corporate entity engaged in industrial painting. At all times relevant to the within action, the Defendant operated under the name IPL

1

Industrial Services transacting business out of a facility located within New Johnsonville, Humphries County, Tennessee and was the Plaintiffs employer at said facility.

3. The Defendant is an employer under 42 U.S.C. 2000e- et seq., Title VII of the Civil Rights Act of 1964 (hereafter "Title VII"), and 42 U.S.C. §1981.

4. The Plaintiff is a person aggrieved under Title VII and 42 U.S.C. §1981.

5. Defendant took adverse employment actions against Plaintiff because he complained to his superior and opposed racially harassing conduct by his Caucasian co-workers directed at an African-American colleague and opposed retaliatory conduct against his Caucasian supervisor who also opposed said racial harassment; all of which he believed was in violation of Section 1981 of the Civil Rights Act of 1964; and Title VII of the Civil Rights Act of 1964.

6. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1343(4) which confers original jurisdiction upon this Court in a civil action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, and pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court in a civil action arising under the Constitution or laws of the United States.

7. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and §1391(c), as well as 42 U.S.C. 2000e-5(f) because the unlawful employment actions alleged herein were committed by the Defendant in the city of New Johnsonville, Tennessee. Moreover the Defendant transacts business in the State of Tennessee and the events giving rise to this action occurred in the Middle District of Tennessee, Nashville Division.

8. Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII. He filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging retaliation and has initiated this action within 90 days of receiving a

Right to Sue. (See Attached Exhibit 1).

## II. FACTS

9. The Plaintiff was employed by the Defendant on May 27, 2011 as an Operator at its New Johnsonville, Tennessee facility located at 1 DuPont Rd ("New Johnsonville Facility").

10. Throughout the Plaintiff's employment, the Defendant provided industrial painting services to DuPont at its New Johnsonville facility.

11. Upon information and belief, as a result of an ongoing contractual relationship between the Defendant and DuPont, employees of both entities worked side by side at the New Johnsonville location.

12. As a result of his position, the Plaintiff worked along-side several employees of IPL and DuPont, including Gregory Brown, an African-American.

13. During his employment the Plaintiff overheard several racially derogatory statements directed toward Greg Brown by some of his Caucasian co-workers, including the use of the word "nigger".

14. The Plaintiff verbally opposed the racial slurs, jokes and comments made by his IPL Industrial Services co-workers on several occasions, both directly to said co-workers as well as to his supervisors.

15. Unfortunately, the conduct did not stop after the Plaintiff opposed the use of racial slurs, jokes and references.

16. On one such occasion in or around December, 2011, a Caucasian co-worker, Amanda Evans, showed a video depicting the uncompleted word "_igger" to the Plaintiff and other Caucasian employees, filling in the missing letter with an "n". The Plaintiff complained to his supervisor, Deran Bass about the video, as well as the use of racial slurs.

3

17. Supervisor Bass informed Plaintiff that he reported the racial slurs and video to Mike Seine, Area Manager for IPL Industrial Services, and questioned the Plaintiff and other employees working the C shift about the video. The Plaintiff again indicated he had seen the video. Shortly thereafter, Mr. Seine called Ms. Evans into his office, however upon information and belief, Ms. Evans was not disciplined.

18. Within a few weeks of complaining to Mr. Seine about the racial slurs and video, Mr. Bass was terminated.

19. After Mr. Bass' February 1, 2012 termination, the Plaintiff was ordered to attend a meeting during which he was questioned by high level management about Mr. Bass and their discussions. The Plaintiff formed the impression that IPL was attempting to obtain negative information about Mr. Bass.

20. In response, the Plaintiff supported Mr. Bass' claims and personally complained about the use of racial slurs, statements and jokes made regarding African-Americans within the facility.

21. The Plaintiff was ultimately presented with a letter that falsely stated that Mr. Bass had instructed IPL employees not to help DuPont employees. The Plaintiff was directed to sign the statement, which Plaintiff considered false, or face termination. The Plaintiff advised IPL that Mr. Bass had not made such a statement; further providing the specific context for what Mr. Bass had stated to the C shift employees. Specifically that DuPont employees had complained that certain IPL employees were providing favored treatment to some DuPont employees, and not others. Mr. Bass directed that the same assistance be provided to all DuPont employees, but reminded them that no assistance should be provided until all their assigned IPL work had been completed.

22. The Plaintiff refused to sign the letter as written.

4

23. In response, Danny Harding, an IPL Manager ~~became angry and~~ accused the Plaintiff of assisting Mr. Bass in his claim against IPL.

24. Subsequently, Mr. Harding assured Plaintiff that he would revise the letter to accurately reflect what the Plaintiff had conveyed, but he never did.

25. The Plaintiff attended a second meeting with Mr. Harding, during which the entire C shift was directed to sign a similar letter or face termination. Mr. Harding advised each employee that anyone caught speaking to Mr. Bass would be terminated. The Plaintiff again refused to sign the letter.

26. The Plaintiff continued to work in the Operator position until approximately April 4, 2012 when he went on medical leave to have knee surgery. Upon his return a few months later, in July 2012, the Plaintiff was assigned to the Blender position, a less favorable position than the Operator position.

27. According to the Defendant, the Plaintiff lost his seniority to a newly hired individual, Robert Copolla, who was given the Operator position.

28. At no time did the Plaintiff request or elect to be moved into the Blender position, which was more physically demanding than the Operator position. Specifically, the Blender position required the Plaintiff walk up and down 3 flights of steps and work part time outside; physical demands not required of the Operator position.

29. Additionally, the Plaintiff was denied overtime opportunities through IPL's refusal to allow him to work on different shifts and was refused breaks, unlike other employees that had not complained about racial slurs, or taken medical leave.

30. The Plaintiff's employment with IPL ended on November 11, 2012 due to the ongoing retaliatory treatment he experienced.

31. The actions taken by the Defendant reflect a pattern of strong-armed threats, intimidation and coercion against its employees to hide illegal discriminatory actions ongoing at its facility.

32. All the actions complained of herein were intentional, adverse, and undertaken by the Defendant in retaliation for the Plaintiff having complained about racial harassment, slurs, jokes and racially charged statements occurring on the job.

### III. CAUSES OF ACTION

#### (1) Retaliation in the Workplace in Violation of Title VII

33. Plaintiff hereby re-alleges and incorporates by reference as if fully set forth herein, the allegations contained in paragraphs 1 through 32 above.

34. At all times asserted herein, Plaintiff was an employee within the meaning of Title VII and thus protected against discrimination and retaliation in employment under 42 U.S.C. 2000e-3 for opposing acts of racial harassment, and the creation of a racially hostile work environment, as well as for his participation in the investigation of said complaints of racial harassment and retaliation.

35. At all times asserted herein, Plaintiff was engaged in protected activity when he complained about and opposed racial harassment on the job site.

36. Defendant, by and through its agents, retaliated against the Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, by subjecting him to adverse employment actions, including but not limited to, disciplinary action and terminating his employment.

6

37. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered loss of income and benefits and impairment of earning capacity, emotional distress, anxiety, anguish, humiliation, and other incidental and consequential damages and expenses.

38. The Defendant's actions were intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of causing harm to the Plaintiff, and he is therefore entitled to punitive damages.

### (2) Retaliation in Violation of 42 U.S.C. § 1981

39. Plaintiff hereby re-alleges and re-avers by reference as if fully set forth herein, the allegations of paragraphs 1 through 38, above.

40. At all times asserted herein, Plaintiff was in a contractual relationship with Defendant, his employer. As a result of having opposed racial harassment, and the creation of a hostile work environment directed against his African-American colleagues, the Plaintiff enjoys the protections afforded under 42 U.S.C. §1981 against retaliation in employment.

41. At all times asserted herein, Plaintiff was engaged in protected activity when he complained about and opposed racial harassment on the job site.

42. Defendant, by and through its agents, retaliated against the Plaintiff in violation of 42 U.S.C. § 1981, as amended, by subjecting him to adverse employment actions, including but not limited to, disciplinary action and terminating his employment.

43. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered loss of income and benefits and impairment of earning capacity, emotional distress, anxiety, anguish, humiliation, and other incidental and consequential damages and expenses.

44. The Defendant's actions were intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of causing harm to the Plaintiff, and he is therefore entitled to punitive damages.

## IV. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to:

(a) Declare and adjudge that Defendant has violated the Plaintiff's rights under Title VII and 42 U.S.C. 1981;

(b) Award nominal, compensatory and punitive damages to the Plaintiff and against Defendant to the full extent allowed under Title VII and 42 U.S.C. 1981 in amount(s) to be determined at trial;

(c) Award back pay, front pay, lost earnings and benefits, preferential rights to jobs and other damages for lost compensation and job benefits with pre-judgment and post-judgment interest suffered by the Plaintiff to be determined at trial;

(d) Award the Plaintiff the costs and expenses incurred in this action, including reasonable attorneys' fees; and

(e) Award the Plaintiff any such additional relief as this Court deems just and proper.

## V. JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues.

Dated: November 18, 2014

Respectfully submitted,

THE SPENCE LAW FIRM

By: _Robert L. J. Spence by CSM_
Robert L. J. Spence, Jr. (BPR #12256)
Chandra S. Madison (BPR #30536)
One Commerce Square, Suite 2200
Memphis, TN 38103
(901) 312-9160 Telephone
(901) 521-9550 Facsimile
rspence@spence-lawfirm.com
cmadison@spence-lawfirm.com

Garry, Williams, Parenti,
Watson & Gary, P.L.
Lorenzo Williams (FBN: 249874)
221 SE. Osceloa Street
Stuart, FL 34994
(772) 283-8260 Telephone
(772) 220-3343 Facsimile
lw@williegary.com
dsn@williegary.com

Attorneys for the Plaintiff